### Ruby W. YOUNG
### v.
### OUACHITA NATIONAL BANK IN MONROE.

Civ. A. No. 760801.

United States District Court,
W. D. Louisiana,
Monroe Division.

March 29, 1977.

---

Stephen J. Katz, Kidd, Katz & Strickler, Monroe, La., for plaintiff.

James A. Rountree, Hudson, Potts & Bernstein, Monroe, La., for defendant.

## RULING ON THE MERITS

DAWKINS, Senior District Judge.

Plaintiff, Ruby W. Young, is claiming damages under the Truth-in-Lending Act (TLA), Title 15 U.S.C. § 1601, *et seq.*, from Ouachita National Bank in Monroe. Counsel filed cross motions for summary judgment, and submitted them for decision on the basis of the complaint, motions, supporting documents, and written arguments.

On January 12, 1976, plaintiff effected a loan with the Bank, for which the latter imposed a finance charge. Defendant issued a credit disclosure statement, which allegedly does not comply with the TLA.

Plaintiff obtained the loan for the purpose of financing her purchase of a 1976 Ford Courier Pick-up Truck from Rivers Ford, Inc., in Monroe, Louisiana. Plaintiff then purchased the truck, and defendant took a chattel mortgage upon it as security for the loan. After plaintiff took possession of the truck, she realized it was a 1975 model, rather than 1976, which she had been promised. Plaintiff became interested in attacking the validity of the loan when she discovered the error. In her motion, and written arguments, plaintiff contends that defendant violated numerous requirements set forth in the TLA. We find that defendant failed to itemize the license tag, title, and registration fees in accordance with 12 CFR § 226.4(b) [1] and Reserve Board

---

1. § 226.4:

   " * * *

   "(b) Itemized charges excludable. If itemized and disclosed to the customer, any charges of the following types need not be included in the finance charge:

   "(1) Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction.

   "(2) The premium payable for any insurance in lieu of perfecting any security interest otherwise required by the creditor in connection with the transaction, if the premium does not exceed the fees and charges described in sub-

Regulations authorized and required by 15 U.S.C. § 1640. Title 15 U.S.C. § 1640(g)[2] clearly sets forth that claimants are entitled to a single recovery upon a loan although there may be multiple disclosure violations. We need not find more than one violation; rather, a single infraction will permit plaintiff to recover statutory damages and attorney fees under 15 U.S.C. § 1640.

On the credit disclosure statement, defendant listed $14.50 as being "official fees." Clearly this sum in actuality represented the following expenses: $10.00 for a license plate; $3.50 for title; and $1.00 to record the sale and mortgage.

Defendant argues that its disclosure of the $14.50 as "official fees" substantially complies with the Act, that lack of further itemization of these exact expenses is not requisite, or is a mere technical violation for which damages cannot be recovered.

Plaintiff, on the other hand, argues that defendant must either (1) itemize the expenses exactly, or (2) include the expenses in the finance charge on the disclosure statement.

In *Starks v. Orleans Motors, Inc.*, 372 F.Supp. 928 (E.D.La., 1974), aff'd without opinion, 500 F.2d 1182 (5th Cir., 1974), the District Court said at page 932:

"III. License Fees

"[8] The question of Orleans' alleged improper disclosure of license and title fees is also raised. On the itemized sales order, a figure of $15 is noted, purporting to cover 'license, license transfer, title, [and] registration fee.' On the disclosure statement this figure is neither separately itemized nor listed as part of the finance charge, but has been included within the cash price. Orleans claims that the figure does not actually represent the

paragraph (1) of this paragraph which would otherwise be payable.
"(3) Taxes not included in the cash price.
"(4) License, certificate of title, and registration fees imposed by law."
 *   *   *   *   *   *
**2.** § 1640(g):
"The multiple failure to disclose to any person any information required under this part or

money paid for the title, etc., but is a 'charge' for a 'service' that includes obtaining the necessary papers. However, any attempt to fit this service within the meaning of section 226.2(i), allowing inclusion within the total purchase price of certain services, must fail because the language of that section excludes charges described in section 226.4. Section 226.-4(b)(4) states that license, title and registration fees 'need not be included in the finance charge' *if itemized*. The options are clear; nowhere is there allowance for inclusion within the cash price.

"Nor does it meet the requirements of itemization that Orleans listed the $15 charge separately on the sales order. The total cost of license, title and registration fees in Louisiana is less than $15. Part of the $15 charge in fact represented compensation to Orleans. Had Orleans tried to rely on the sales itemization of $15, to the extent that figure exceeded actual license and title fees, there would be a 'hidden finance charge' that must be included within the total finance charge. 12 C.F.R. § 226.8(c)(8). In addition, any itemization must be on the disclosure statement, not on a separate document such as a sales order. 12 C.F.R. § 226.-8(a)."

In *Meyers v. Clearview Dodge Sales, Inc.*, 539 F.2d 511 (5th Cir., 1976), the Fifth Circuit further construed the statutes and regulations involved here, at pages 518 through 519:

"Appellants assert that they have fully complied with the mandates of § 226.8(c), since the 'cash price' disclosed was the price a purchaser for cash would pay for the car. However, the specific disclosure requirements of section 226.8(c) and 226.-4(b) limit the definition of 'cash price' to

part D or E of this subchapter to be disclosed in connection with a single account under an open end consumer credit plan, other single consumer credit sale, consumer loan, consumer lease, or other extension of consumer credit, shall entitle the person to a single recovery under this section but continued failure to disclose after a recovery has been granted shall give rise to rights to additional recoveries."

the price of the property, the automobile (accessories, delivery and installation charges included), plus the sales tax thereon. Section 226.4(b)(4) clearly requires the itemization and separate disclosure of the charge for 'tag, title and fees.' See *Starks v. Orleans Motors, Inc.,* 372 F.Supp. 928 (E.D.La.), *aff'd* 500 F.2d 1182 (5th Cir. 1974). Additionally, since the 'Documentary Service Fee' was included in the amount financed, but was neither a fee for 'service related to the sale' nor a part of the finance charge, it should have been separately disclosed pursuant to Regulation Z § 226.8(c)(4). The failure to *individually itemize* these charges constituted a violation of the Truth in Lending Act." (Emphasis supplied.)

In a decision rendered the same day, heard by the same three Judges, and authored by the same Judge as in *Meyers,* the Fifth Circuit elaborated even further on the Truth-in-Lending Act:

"We come at last to the fourth and final issue raised by this appeal. Plaintiff, Johnnie Mae Gordon, contends that defendant Backus failed to itemize and disclose the license, certificate of title, and registration fees chargeable herein as required by section 226.4(b) of Regulation Z, and thereby failed to correctly disclose the finance charge imposed in this transaction. Her complaint is that Backus listed a $16.00 charge for tag and title registration under the heading 'official fees' in the 'other charges' section of the disclosure statement. She argues that because components of the 'official fees' were not 'itemized,' the amount charged under that heading should have been included in the finance charge. We agree.

"Section 226.4(b) provides in pertinent part as follows:

If *itemized and disclosed to the customer,* any charges of the following types need not be included in the finance charge:

\*    \*    \*    \*    \*    \*

(4) License, certificate of title, and registration fees imposed by law.

The requirements of this section are clear; unless the fees imposed by law in this transaction are *itemized,* they must be included in the computation of the finance charge. Backus has obviously failed to 'itemize' the official fees and has not included the $16.00 fee as part of the finance charge. Consequently, Backus must be held liable for its failure to properly disclose the finance charge imposed in this transaction.

"While the district court found that the defendant had failed to 'itemize' the official fees as required by the Act and Regulation Z, it nevertheless refused to impose liability for what it referred to as a violation 'miniscule in its scope and amount.' However, once the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability. The civil liability section of the Truth in Lending Act provides that:

Except as otherwise provided in this section, any creditor who fails to comply with *any requirement imposed under this part* or part D of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damages sustained by such person as a result of the failure;

(2)(A) in the case of an individual action twice the amount of any finance charge in connection with the transaction, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000;

\*    \*    \*    \*    \*    \*

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

Therefore, unless one of the defenses provided in the Act is applicable to this transaction, the Court must award the successful litigant-consumer the statutory penalty set out above. *See Thomas v. Myers-Dickson Furniture Co.,* 479 F.2d 740 (5th Cir. 1973). The district court

erred in granting Backus' motion for summary judgment on this issue." *Grant v. Imperial Motors*, 539 F.2d 506, 510–511 (5th Cir., 1976).

▮ Consequently, it is clear that lending institutions must choose, as plaintiff argues, either to include the various expenses in the finance charge, or itemize them in detail; merely summarizing or categorizing fees and expenses is not adequate disclosure.

"It makes no difference that this error was unintentional and made without wilful purpose to mislead. Although these factors might have some weight were we faced with possible criminal penalties under the Act (28 U.S.C. § 1611), the reference to 'unintentional error' in section 1640(c) has been held to apply only to clerical error. *Palmer v. Wilson*, N.D.Cal. 1973, 359 F.Supp. 1099; *Douglas v. Beneficial Finance Co.*, D.Alaska 1971, 334 F.Supp. 1166; *Buford v. American Finance Co.*, N.D.Ga.1971, 333 F.Supp. 1243; *Ratner v. Chemical Bank New York Trust Co.*, S.D.N.Y.1971, 329 F.Supp. 270. But see *Thrift Funds of Baton Rouge, Inc. v. Jones*, La.1973, 274 So.2d 150 (good faith misinterpretation of *state law*, not the Truth in Lending Act)." *Starks, supra*, at page 931.

▮ Here, there was a clerical error in the finance charge listed on the credit disclosure statement. The amount actually should have been $348.83 (defendant's answer to plaintiff's interrogatory No. 14) rather than $345.83, the amount shown. To arrive at the finance charge, one of the measuring sticks in assessing statutory damages (plaintiff, here, is not seeking actual damages) under 15 U.S.C. § 1640, we must add the improperly disclosed expenses, $14.50, to the $348.83 set forth in the disclo-

sure. Therefore, the total finance charge is $363.33.

"The finance charge found on the disclosure statement is $307.28. To this must be added the $15 'service' fee since, under section 226.4(b)(4), if not separately itemized, these charges are to be included within the finance charge. This gives a total finance charge of $322.28." *Starks, supra*, at page 932.

Plaintiff argues that the life insurance charge, $66.89, likewise should be added to the above total in calculating the finance charge. As previously noted, plaintiff is entitled to but a single recovery for disclosure infractions, and improperly disclosed charges must be added to the finance charge in calculating the quantum of statutory damages.

On the credit disclosure statement, the cost of life insurance was disclosed separately. Mrs. Young signed the statement twice, once at the bottom and once in the middle—the portion of the form dealing with insurance. The date of her signature, which showed she desired credit life insurance, was typed next to her signature there. Thus, she clearly knew that purchase of life insurance was optional. The form itself sets forth that the borrower has the option, and is not required to purchase insurance. Moreover, in her deposition, at pages 8 through 9, plaintiff indicated that she knew she did not have to purchase this insurance.

▮ Plaintiff argues that defendant violated 12 CFR § 226.4(a)(5)[3] and other Truth-in-Lending regulations by (1) not having Mrs. Young date her signature where she indicated she wanted the insurance; (2) not stating the term of the insurance; and (3) not filling out completely the middle section of the statement dealing with insurance.

---

**3.** § 226.4:

"(a)(5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless

(i) The insurance coverage is not required by the creditor and this fact is clearly and conspic-

uously disclosed in writing to the customer; and

(ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.
* * * *"

**1328**

(1) The statement was dated. Although the date was typed rather than inserted by Mrs. Young's own act, the request for insurance was indeed dated and plaintiff signed it. To hold that Mrs. Young must have dated the insurance request in her own writing would violate the spirit of the TLA. The Act is designed to make lenders disclose fully all the rights and obligations surrounding the transaction, and we find that plaintiff did understand her insurance options.

(2) Plaintiff also argues that defendant should have shown the term of the life insurance on the credit disclosure statement. Separate disclosure of the life insurance term is unnecessary when it coincides with the term of the loan.

(3) We would be adding overtechnicality to LTA if we were to rule that plaintiff could recover greater damages because some blanks were left unfilled on the statement. The cost of the insurance is revealed clearly only a few lines above her signature, and, once again, plaintiff has admitted she knew she was purchasing life insurance. *Doggett et al. v. Ritter Finance Co.*, 528 F.2d 860 (4th Cir., 1975); *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971 (5th Cir., 1974).

For these reasons, we grant plaintiff's motion for summary judgment; defendant's cross motion is denied. In accordance with 15 U.S.C. § 1640, defendant is ordered to pay to plaintiff $726.66, twice the amount of the finance charge. Defendant also must pay plaintiff her attorney's fee. Plaintiff's counsel hereby in instructed to file an affidavit showing his time and expenses incurred in handling this matter and a final judgment for our signature.