**Ulie MOORE, Plaintiff,**

v.

**TOWER LOAN OF MISSISSIPPI, INC., d/b/a Tower Loan of Eupora, Defendant.**

**No. WC 79–79–S–P.**

United States District Court, N. D. Mississippi, W. D.

Feb. 29, 1980.

Leon Johnson, North Miss. Rural Legal Service, West Point, Miss., for plaintiff.

Robert R. Marshall, Young, Scanlon & Sessums, Jackson, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action is before the court upon the defendant's motion for summary judgment, pursuant to Rule 56, Fed.R.Civ.P. After considering briefs in support of and in opposition to the motion, and after receiving oral argument from counsel for both sides, the court directed counsel for defendant to supplement the defendant's motion by filing additional affidavits. These affidavits having been filed, the matter is now ready for decision.

The plaintiff's complaint alleges a violation of certain provisions of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. The facts of this case, as revealed by plaintiff's complaint and by the arguments of counsel, indicate that on December 26, 1978, the plaintiff entered into a loan agreement with the defendant, by executing a promissory note and security agreement. The amount financed, as evidenced by the disclosure statement given to the plaintiff, was $791.87. This amount was to be repaid in 25 consecutive monthly installments, at a purported annual percentage rate of 35.66%. The finance charge, therefore, was calculated to be $358.13, and the total amount to be repaid was $1150.00. Plaintiff alleges that the defendant violated the Truth in Lending Act during this transaction, in that it: (1) failed to disclose the

terms of the contract in meaningful sequence; (2) failed to give "specifically dated and separately signed" written affirmative indication of a desire to obtain credit life insurance; and (3) failed to state properly the annual percentage rate of the finance charges. The defendant has alleged in its motion and supporting affidavits, that it complied in all respects with the requirements of the Truth in Lending Act and Regulation Z, that it relied in good faith upon certain loan tables and charts, and that it is, therefore, entitled to a judgment as a matter of law.

The Truth in Lending Act was designed "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit. . . ." 15 U.S.C. § 1601(a). To achieve that purpose, Congress established a broad statutory scheme of disclosure requirements with which creditors must comply before lending money. In general, a creditor must disclose "clearly and conspicuously, in accordance with the regulations of the [Federal Reserve] Board, to each person to whom consumer credit is extended and upon whom a finance charge

is or may be imposed," certain required information. 15 U.S.C. § 1631(a).[1] The disclosures required in the type of transaction in the instant case, are set forth in 15 U.S.C. § 1639(a).[2] These general requirements are supplemented by more specific regulations promulgated by the Federal Reserve Board, under the authority of 15 U.S.C. § 1604. A creditor may be subject to criminal liability for "willfully and knowingly" failing to provide the required information, 15 U.S.C. § 1611. In addition, 15 U.S.C. § 1640 provides that "any creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person" for the sum of any actual damages, twice the amount of the finance charge, and all costs of the action, including a reasonable attorney's fee. Section 1640 also includes certain defenses to a private action, including a violation resulting from a bona fide error or good faith compliance with any rule, regulation, or interpretation of the Federal Reserve Board. 15 U.S.C. § 1640(c) & (f).

The plaintiff alleges that, in the transaction involved here, the defendant violated § 1631 by failing to disclose certain infor-

---

1. The terms "credit" and "creditor" are defined at 15 U.S.C. § 1602(e) & (f), and 12 C.F.R. § 226.2(q) & (s). "Consumer credit" is defined as

    credit offered or extended to a natural person in which the money, property, or service which is the subject of the transaction is primarily for personal, family, household, or agricultural purposes. "Consumer loan" is one type of "consumer credit."

    12 C.F.R. § 226.2(p).

2. 15 U.S.C. § 1639(a), provides, in pertinent part:

    Any creditor making a consumer loan or otherwise extending consumer credit . . . shall disclose each of the following items, to the extent applicable:

    (1) The amount of credit of which the obligor will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf.

    (2) All charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge.

    (3) The total amount to be financed (the sum of the amounts referred to in paragraph

(1) plus the amounts referred to in paragraph (2)).

(4) Except in the case of a loan secured by a first lien on a dwelling and made to finance the purchase of that dwelling, the amount of the finance charge.

(5) The finance charge expressed as an annual percentage rate except in the case of a finance charge

(A) Which does not exceed $5 and is applicable to an extension of consumer credit not exceeding $75, or

(B) Which does not exceed $7.50 and is applicable to an extension of consumer credit exceeding $75.

. . . . .

(6) The number, amount, and the due dates or periods of payments scheduled to repay the indebtedness.

(7) The default, delinquency, or similar charges payable in the event of late payments.

(8) A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

mation as required by Regulation Z. Specifically, the plaintiff alleges that the defendant failed to give those disclosures required by 15 U.S.C. § 1639 and 12 C.F.R. § 226.8[3] "clearly, conspicuously, [and] in meaningful sequence." 12 C.F.R. § 226.-6(a). In addition, the plaintiff contends that the defendant failed to state properly the annual percentage rate of the finance charges, required by 15 U.S.C. § 1639(a)(5) and 12 C.F.R. §§ 226.5 & 226.8(b)(2). Finally, in an allegation not presented in the plaintiff's complaint but raised in the plaintiff's brief and during argument on the motion for summary judgment, the plaintiff contends that the defendant did not properly disclose the amount of loan proceeds to which the plaintiff had actual use. *See* 15 U.S.C. § 1639(a)(1); 12 C.F.R. § 226.8(d)(1).

The court finds that the material facts involved in this action are not in dispute. The issue to be resolved is whether the defendant "is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. This naturally involves the proper interpretation of those statutes and regulations previously cited, and a decision as to whether or not the defendant has complied with the requirements of the Truth in Lending Act and Regulation Z.

■ Plaintiff would ask this court to interpret the language of § 226.6(a) of Regulation Z, calling for disclosure in a "meaningful sequence", to require that the terms of the loan agreement be set out in a particular order or progression. The defendant correctly points out, however, that the Fifth Circuit Court of Appeals, in interpreting this regulation, does not require such a hard and fast rule. The statute and regulations "with respect to meaningful sequence do not require any particular order for the disclosure of the security interest retained by the lender so long as that description is clear and conspicuous." *Lamar v. American Finance System*, 577 F.2d 953, 954 (5th Cir. 1978), *citing with approval* Federal Reserve Board Public Position Letter No. 780 (April 10, 1974).[4] In the instant case, the items at the top of the disclosure statement are all logically and arithmetically related to each other. Item number 1 is the total sum of all the payments, that is, the amount financed added to the finance charge. Item number 2 is the finance charge, number 3 is the annual percentage rate, and number 4 is the amount financed. Items number 6 through 8 list the deductions from the amount financed, and number 9 is the cash to or for borrower. The court is of the opinion that the logical relationship of these items is sufficient to meet the requirement that they be clear, conspicuous, and in meaningful sequence. Plaintiff argues that requiring the sequence to begin with the amount financed, and adding to that amount the finance charges, would better facilitate the purpose of the Truth in Lending Act. The plain language of the Act, however, does not mandate a specific and stringent requirement for the ordering of items on the disclosure statement. It is only necessary that logically related items be grouped together logically.

■ The plaintiff has also raised the issue of whether or not the net amount of the loan proceeds paid to or for the plaintiff was properly disclosed. Section 1639(a)(1) requires the disclosure of the "amount of credit of which obligor will have the actual

---

**3.** 12 C.F.R. § 226.8 governs the disclosures required to be made in consumer transactions of the type involved in the action sub judice.

**4.** The Position Letter cited above states that the words "meaningful sequence"

relate to a presentation of required disclosures in a logical order with respect to those items which have an arithmetical relationship to each other. For example, many of the items called for in § 226.8(b) are arithmetical and follow each other in logical progression. . . . A meaningful sequence

would call for those items which are arithmetically related to appear within a reasonable proximity to each other, not mixed with items which are irrelevant to a progression of arithmetical computations or thought.

The construction which the Board places upon its own regulation, while not binding upon this court, is certainly persuasive and entitled to great deference. *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971 (5th Cir.), *rehearing denied*, 502 F.2d 1167 (1974).

use, or which is or will be paid to him or for his account or to another person on his behalf." In *McGowan v. Credit Center of North Jackson, Inc.*, 546 F.2d 73 (5th Cir. 1977), the court held that this section does not require the creditor to itemize the separate parts or components of the net amount to the borrower. So long as the disclosure statement separates the total amount financed from the net amount to the borrower, it is sufficient under § 1639. In this case, the supplemental affidavit of Philip J. Kyser, Jr., indicates that a portion of the net proceeds to the plaintiff was used to repay an outstanding indebtedness to the defendant. The remainder was paid to the plaintiff. This breakdown of the proceeds was not indicated on the disclosure statement, and plaintiff claims that such a breakdown is required under § 1639. Such is not the holding of *McGowan*, however, and it is clear that the defendant has complied with both the requirement of § 1639(a)(1) and its interpretation by the Fifth Circuit.

Plaintiff next contends that the defendant "failed to properly state the annual percentage rate of the finance charges." This allegation is based upon the requirement of 12 C.F.R. § 226.5(b)(1), and Supplement I to Regulation Z, 12 C.F.R. § 226.40. Plaintiff contends that the annual percentage rate, determined through the mathematical equation found in Supplement I, is actually in excess of the percentage rate listed on the disclosure statement.

By way of affidavit, the defendant has shown that the annual percentage rate was calculated from certain tables prepared and supplied by Carleton Financial Services, Inc. Defendant states that the tables "were utilized by Tower in reliance on Carleton Financial Services' assurance that they were prepared in accordance with the rules of § 226.5, et seq." That section provides that any chart or table other than that published by the Federal Reserve Board may be utilized to determine the annual percentage rate, provided it meets certain requirements.[5] 12 C.F.R. § 226.-5(c)(2). As evidenced by the affidavits and the attachments thereto, the court is of the opinion that the table used by the defendant meets those requirements and is, therefore, in compliance with Regulation Z.[6]

For the foregoing reasons, the court is of the opinion that there is no genuine issue of material fact, and that the defendant is entitled to a judgment as a matter of law. The court will enter an order granting the defendant's motion for summary judgment and dismissing the plaintiff's complaint. Since this opinion disposes of the defendant's motion only, it does not address the issues in this case raised by the defendant's counterclaim. Any such issues will be resolved either upon the proper motion or at the trial of the case.

---

**5.** 12 C.F.R. § 226.5(c)(2) requires that the chart or table may be used if:

(i) It is prepared in accordance with the general rule set forth in paragraph (b)(1) or (2) of this section;

(ii) It bears the name and address of the person responsible for its production . . . and . . . an identification of the method of computation;

(iii) . . . [I]t permits determination of the annual percentage rate to the nearest one-quarter of 1 percent for the range of rates covered by the table; and

(iv) . . . [I]t discloses the amount of the finance charge and the annual percentage rate on the median balance within each range or bracket of balances . . . .

**6.** As to the plaintiff's allegation that the defendant failed "to give specifically dated and separately signed written affirmative indication of a desire to obtain credit life or health and accident insurance," the mere absence of a date inside the insurance agreement portion of the disclosure statement does not violate Regulation Z. *See Hayslip v. Dunlap Chevrolet Co.*, 560 F.2d 192 (5th Cir. 1977).